EDWARD HODGINS v. STATE

190 So. 875
En Banc
Opinion Filed July 11, 1939
Rehearing Denied Sept. 14, 1939

*Paul Lake,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, and *J. Rex Farrior,* State Attorney, for Defendant in Error.

· PER CURIAM.—On April 6, 1937, Lucius Rodgers and Edward Hodgins were jointly indicted in two separate counts by a Grand Jury of Hillsborough County, Florida, for the murder of William L. Wolfe on the 16th day of January, 1937. In the first count the defendants were charged with the striking of the deceased with a hammer, thereby causing his death. In the second count Edward Hodgins was charged with striking the fatal blow, or blows, and that Lucius Rodgers was present, aiding and abetting. On April 12, 1937, the defendants were arraigned and each entered a plea of not guilty to each count of the indictment. On April 12, 1937, an order of severance was made and entered by the trial court.

On April 26, 1937, counsel for Edward Hodgins presented his petition to the Circuit Court of Hillsborough County, Florida, for a writ of habeas corpus *ad testificandum* for Lucius Rodgers, a material, important and necessary witness in behalf of the petitioner, Edward Hodgins. The petition recited that Lucius Rodgers was named as a witness on the back of the indictment against the petitioner. Counsel for

petitioner stated in the petition that he requested the attorney for Lucius Rodgers to permit or allow him the privilege of an interview and conference with his client, Lucius Rodgers. Likewise the State Attorney's office had been requested to permit or allow counsel for Edward Hodgins to interview or confer with the witness Lucius Rodgers. The Sheriff of Hillsborough County, his deputies, and jailer likewise refused the attorney for the petitioner the right and privilege of interviewing the witness Lucius Rodgers. It was made to appear in the petition that Lucius Rodgers had been frightened and coerced by the State Attorney's office, and deputies sheriff of Hillsborough County, and as a result of said fright and coercion that such evidence as would be given in the cause by Rodgers would not be the truth but a voluntary statement to conform to the wishes of the State Attorney's office, deputies sheriff and counsel for Lucius Rodgers. The petition for writ of habeas corpus *ad testificandum* was denied.

On May 12, 1937, a second petition for writ of habeas corpus *ad testificandum* was presented to the Honorable Harry N. Sandler, Circuit Judge, setting forth substantially as above and prayed that the writ of habeas corpus *ad testificandum* issue and that counsel for the petitioner should be permitted to privately interview and talk with Lucius Rodgers. On May 12, 1937, an order was made and entered denying the writ of habeas corpus *ad testificandum* for an interview with Lucius Rodgers.

The defendant, Edward Hodgins, was placed upon trial and during the progress of the trial, but prior to the finding of a verdict, counsel for Edward Hodgins presented for the third time a petition for writ of habeas corpus *ad testificandum* for the witness, Lucius Rodgers, and the trial court then and there overruled and denied the petition.

The record shows that Lucius Rodgers and Edward

Hodgins are colored men, while the deceased William L. Wolfe, was a white man. The witness, Lucius Rodgers, after a severance was granted, was offered as a witness for the prosecution against Edward Hodgins. The jury rendered a verdict of murder in the first degree, with recommendations to mercy. The trial court sentenced the defendant below to the State Prison for life, and an appeal has been taken and perfected from said judgment to this Court, with a number of assignmnets presented and argued for a reversal.

It is contended that the petitioner was deprived of his constitutional right of compulsory process for the attendance of witnesses in his behalf and forced into trial, over his objections, without the opportunity to interview the witness Rodgers or to confer with him. It cannot be overlooked that the plaintiff in error was on trial on one of the most serious charges known to the law; and certain rights are guaranteed by the Constitution in criminal prosecutions and among which are: (a) the right to a speedy and public trial; (b) a trial by an impartial jury; (c) the right to be heard by himself or counsel, or both; (d) to demand the nature and cause of accusation; (e) to meet the witnesses face to face; (f) have compulsory process for the attendance of witnesses in his favor. Counsel by sworn petition, on three different occasions, brought to the attention of the trial court certain facts affecting his client's defense on the serious charge of murder. These petitions were sworn to when presented to the Court below and recited that counsel for Edward Hodgins believed Lucius Rodgers was a material, important and necessary witness in his client's behalf, and the facts were within the knowledge of the said witness only; that counsel for Lucius Rodgers refused to allow counsel for petitioner to interview or confer with Lucius Rodgers; that the State Attorney's office withheld permis-

sion to interview the said Lucius Rodgers; the Sheriff of Hillsborough County and his deputies and the jailer where Rodgers was incarcerated declined to permit or allow counsel for the petitioner to interview or confer with the witness Rodgers. The petitioner expressed the view that the witness had been frightened and coerced by an Assistant State Attorney and deputies sheriff and for this reason would not testify to the truth concerning matters charged in the indictment.

In light of the serious charges appearing in the sworn petition for a writ of habeas corpus *ad testificandum* we think the trial court should have issued the writ sought and within a reasonable length of time and after the interview between counsel for petitioner and the witness Rodgers, set a date for trial, first allowing counsel for Edward Hodgins ample time in which to prepare his defense. See Section 11 of the Declaration of Rights of the Constitution of Florida; Moore v. State, 59 Fla. 23, 52 So. 971; May v. State, 89 Fla. 78; 103 So. 115; Messer v. State, 120 Fla. 95, 162 So. 146; Deeb v. State, 131 Fla. 362, 179 So. 894.

The evidence shows that the crime was committed on Saturday night, January 16, 1937. Plaintiff in error reached his home, located a few blocks from where the deceased was murdered, about 5:00 o'clock P. M., and changed clothes. He had worn during the day overalls, and, returning to his work on Monday wore the same overalls. He was taken into custody around 10:00 o'clock Monday night after the homicide and taken to the county jail and closely questioned. The defendant Hodgins testified that he was struck in the mouth, beaten on the head and back a number of blows while at the jail shortly after being arrested, and that he bled freely from the blow received in his mouth. There is no evidence in the record contradicting the testimony of the darkey about being beaten when taken to the jail.

The overalls of the defendant were taken from him and sent to F. B. I. at Washington, and testimony given to the jury to the effect that certain spots appearing thereon were human blood. Counsel for the defendant objected to this testimony because it was not shown that the defendant was wearing the overalls on the evening of the homicide. The State did not offer testimony to show that the defendant was wearing the overalls on the night of the homicide, but the defendant offered much testimony to show that he had not worn the overalls from Saturday afternoon until the following Monday morning. This ruling was error on the part of the trial court. It does not meet the requirements of the law for one of the State's witnesses to say that the defendant told him he was wearing these overalls on Saturday night when the homicide was committed.

The evidence shows that the deceased was a collector and made weekly rounds among the houses near the spot where murdered and it was assumed that he had on his person money received from his customers when murdered. The State, to establish motives for the murder on the part of the defendant introduced evidence to show that the defendant had failed to pay the taxes against his home for several years prior to the murder; that he had at the time delinquent water bills, and offered evidence of a mortgage on his home dated in March after the homicide in January, 1937. Counsel for the defendant seasonably objected and these objections were overruled by the trial court. We do not think this is competent testimony to show motive for the crime under the particular circumstances of this case.

The evidence shows that the defendant owned his home free from mortgaged debt until this trouble arose, when he gave his attorney a mortgage. He owned an old car which he used in going to and from his work. The grocer near his home extended him credit and he managed to have steady

employment. His wife taught school in Hillsborough County and his children had employment, and these facts were not disputed in the record. He was a carpenter and bricklayer and had lived in Tampa for many years without being charged with crime; he was a member of and regularly attended a church in his community. Hon. C. C. Whitaker, a prominent member of the bar of Tampa, testified as to the good character of the defendant whom he had favorably known for several years. A physician gave similar testimony and several members of his race testified as to his good character. He was about fifty years of age. The evidence here has the earmarks of good citizenship on the part of this defendant for a number of years past. When good character is established, there is a presumption that it will continue and the same should not be destroyed by suspicions, innuendoes, and inferences, but only by competent and lawful testimony.

In consideration of the entire record in this case we cannot say that right and justice have prevailed as contemplated by Section 4 of the Declaration of Rights of the Constitution of Florida. For the errors pointed out, the judgment appealed from is hereby reversed and a new trial awarded.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs specially.

THOMAS, J., concurs in conclusion.

Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BUFORD, J. (concurring specially).—During the progress of the trial the State was allowed to introduce, over the objection of the defendant, evidence that at the time of the homicide taxes were delinquent on his home. The State

was also permitted to introduce, over the objection of defendant, evidence showing that subsequent to defendant's arrest he had placed a mortgage on his home.

The purpose of this evidence appears to have been to show that defendant was without ready cash.

That taxes upon one's home become delinquent because of nonpayment is certainly not to be taken as a motive for committing a murder in the attempt to commit a robbery.

That one is accused of crime and finds it necessary to mortgage his home to produce funds is no evidence of his guilt and neither does the necessity which requires one to resort to executing such a mortgage constitute any evidence of motive for the commission of the crime of which he is accused. This sort of evidence could serve no legitimate purpose. It was improper and prejudicial to the defendant.

For the error above referred to, the judgment should be reversed.

TERRELL, C. J., WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.