422 So.2d 833 (1982)
Bernard BOLENDER, Appellant,
v.
STATE of Florida, Appellee.
No. 59333.
Supreme Court of Florida.
October 28, 1982.
Rehearing Denied December 20, 1982.
*834 Gerald D. Hubbart, Miami, for appellant.
Jim Smith, Atty. Gen. and Anthony C. Musto, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Bernard Bolender appeals his convictions of first-degree murder and the trial court's imposition of multiple death sentences after the jury had recommended life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the convictions and sentences.
The state charged Bolender and two codefendants with four counts of first-degree murder, four counts of kidnapping, and four counts of armed robbery for the brutal torture slayings of four alleged drug dealers. Bolender was tried separately because one codefendant, Paul Thompson, had been adjudicated incompetent and the second codefendant, Joseph Macker, pled guilty to reduced charges and became a state witness. Macker received concurrent life sentences on all twelve counts, plus fifteen years on a possession of cocaine charge.
The testimony at trial indicates that on the evening of January 8, 1980 the codefendants were at Macker's residence when two of the victims, John Merino and Rudy Ayan, arrived to participate in a drug deal. An argument erupted and Bolender, armed with a gun, ordered the two to strip. A short while later Thompson entered holding Scott Bennett, another subsequent victim, at gunpoint. Thompson said he had surprised Bennett lurking in the bushes outside, armed with two guns. Thompson also discovered a kilogram of cocaine on Bennett which the defendants confiscated. Macker testified that at that point he picked up a gun and went outside to see if anyone else was hiding. He saw a car driving back and forth in front of the house and motioned the driver to come inside. The driver would not. Thompson then ordered Merino to get dressed, and the two of them lured the driver, Nicomedes Hernandez, into the house.
The defendants ordered the additional victims to strip and robbed all four of their jewelry. Thompson left to search the car driven by Hernandez and returned with approximately $3,000 in cash and two more guns. At that point Bolender threatened to kill all four if they did not reveal the location of an additional twenty kilograms of cocaine.[1]
Macker testified that during the ensuing hours the victims were tortured and terrorized in an attempt to obtain their cocaine. He stated that Bolender used a hot knife to burn the back of Hernandez. Bolender also kicked the victims and beat them with a baseball bat and even shot Hernandez in the leg in an attempt to make him talk. The victims insisted, however, that they only had one kilogram of cocaine and not the twenty that Bolender wanted. Macker admitted hitting Merino with the baseball bat but denied any further involvement in the beatings, saying that Bolender dominated him and Thompson. Later they wrapped the victims in sheets, rugs, bedspreads, and the material from a beanbag chair. Bolender and Thompson placed them in the blue Monte Carlo Hernandez had been driving. John Merino was still alive at this point; the others were, presumably, dead. Bennett's and Ayan's bodies were placed in the trunk, Merino in the back seat, and Hernandez in the front. At approximately 4:30 a.m. Bolender and Thompson left with the Monte Carlo and Bolender's car and drove onto the I-95 expressway. They parked the car on the side of the expressway a short distance past the entrance ramp. Intending to burn the car and the victims, they poured gasoline on the vehicle and the *835 surrounding grass and set the grass on fire as they left. Burning the car failed, however, because several motorists saw the fire and put it out.
The defendants thoroughly cleaned the Macker home, removing the bloodied carpeting from the bedroom and living room and scrubbing down the walls. Later, several of the sheets and rugs found wrapped around the bodies were identified as coming from the Macker home. Bolender's fingerprints were found on the Monte Carlo, and on January 13, 1980 he and Macker were arrested for the murders. Five days later Macker gave a statement implicating himself, Bolender, and Thompson. He also told the police where they had disposed of the weapons and other evidence.
The jury convicted Bolender of four counts of first-degree murder, four counts of kidnapping, and four counts of armed robbery. Neither the state nor Bolender presented any evidence at the sentencing hearing. After arguments by counsel, the jury recommended a sentence of life imprisonment. The judge did not accept the jury's recommendation, but, rather, imposed the death sentence upon finding all but one of the statutory aggravating factors to apply.[2] The court found nothing in mitigation.
Bolender alleges that the trial court erred in denying his petition for a writ of habeas corpus ad testificandum to secure the attendance of codefendant Paul Thompson as a witness at trial. He contends that there was no showing Thompson was incompetent to testify and that there was no effective exercise of Thompson's privilege against self-incrimination.
A writ of habeas corpus ad testificandum is used to secure the attendance of an incarcerated witness at pretrial proceedings or at trial. State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207 (1933); Hodgins v. State, 139 Fla. 226, 190 So. 875 (1939). The issuance of the writ is in the discretion of the trial court, Moody v. State, 418 So.2d 989 (Fla. 1982); Baker v. State, 47 So.2d 728 (Fla. 1950), and in most instances its use has been superseded by statute. Section 914.001, Florida Statutes (1979), provides that witness subpoenas in criminal cases shall run throughout the state, and section 48.051, Florida Statutes (1979), specifically allows for service of process on state prisoners. Therefore, since habeas corpus is a highly prerogative writ, Frizzell v. State, 238 So.2d 67 (Fla. 1970), petitions for habeas corpus ad testificandum, as other petitions for writs of habeas corpus, should not be granted when the relief sought can be obtained through other legal processes. State ex rel. Singleton v. Walters, 158 So.2d 513 (Fla. 1963).
In the instant case, Bolender served Thompson with a witness subpoena at the facility where Thompson was incarcerated. Thompson's attorney moved to quash the service on the grounds that Thompson had been adjudicated incompetent and a guardian had been appointed. Under section 48.041, Florida Statutes (1979), his guardian should have been served. The court reserved ruling on that motion, but Bolender never sought to serve the proper party or enforce the original subpoena. At the hearing Thompson's attorney also informed the court that his client would invoke his right to remain silent if called at trial.
On April 8, 1980 Bolender filed a motion to sever his trial from Thompson's and to continue his trial until further proceedings on Thompson's competency had been held. He attached to the motion a purported proffer of Thompson's testimony in unsigned affidavit form. The form, prepared by Bolender's attorney, simply stated that *836 Bolender was not present at Macker's house between 9:00 p.m., January 7, 1980 and 3:00 a.m., January 8, 1980. The trial court denied the motion[3] and stated to defense counsel:
I have reviewed the motion that was filed and I recognize what you are trying to do.
I do not feel that it is an appropriate procedure for me to follow to either sever your client from this one or to continue the trial in this case.
As far as I know, Thompson was still incompetent at the time you had discussions with him.
Until such time as I get reports from psychiatric experts that would indicate that he had regained his competency, I have got to go by the presumption at that time, apparently, based upon the judge's earlier order, he was, in fact, incompetent.
Your position is noted and I appreciate it, but I decline to agree.[4]
Furthermore, the trial court noted that Bolender's counsel had conceded that Thompson's attorney had advised Thompson to invoke his privilege against self-incrimination.
On the day of trial Bolender filed a second motion to continue until an adjudication of Thompson's competency to stand trial. The court also denied this motion. During the presentation of his case, Bolender moved the trial court to issue a writ of habeas corpus ad testificandum securing Thompson's presence as a witness. The trial court denied the motion, stating:
We have been through this on at least three occasions previously, and you have brought before me on prior occasions the lawyer who represents Mr. Thompson who had indicated that his client would take the fifth amendment were he competent to testify.
He is still presently under an order signed by Judge Hoeveler that he is not competent and has never been found to be competent until this time.
I think that your order to bring him here for that purpose is moot, and I decline to sign it. We have discussed this on at least three occasions previously.
Defense counsel then stated:
Your Honor, I bring it up to the court because I want to be certain in case this trial should necessitate an appeal, I want the record to be absolutely clear my position is that the competence of Mr. Thompson to testify as a witness, even if it is at issue, I believe that Thompson, even if incompetent, can testify to what he saw or heard on the night of the occasion if he was in Mr. Macker's home.
I believe that the testimony he would give would tend to exculpate Mr. Macker  excuse me, Mr. Bolender from the crimes for which he is charged.
Consequently, I want to make the record absolutely clear I believe my client is denied his right to confrontation of witnesses.
The court replied:
You earlier provided me with the information you wished to call him and had honestly stated at that motion that you had been advised by Mr. Thompson's counsel were he called, he would be advised not to answer based on his rights under the fifth amendment.
I recognize what you are trying to do today, and I abide by earlier rulings.
Given these facts we find no abuse of discretion by the trial court in denying the writ of habeas corpus ad testificandum. Bolender was on notice from the April 8 hearing that his original subpoena may have been defective, yet he failed to correct the improper service or file for the writ prior to trial. By waiting until the state had rested before seeking the writ, Bolender improperly sought to disrupt and delay the proceedings, and the court properly denied his motion.
Bolender also alleges that the trial court erred in refusing to permit a defense witness, Mrs. Claudia Merino, to be recalled to testify through an interpreter. The witness *837 had no difficulty answering questions on direct examination, but became confused as to certain dates and times when cross-examined by the state. At that time the court indicated that if the Spanish-speaking woman wanted an interpreter one would be provided. She made no such request and was excused after redirect. The next morning defense counsel sought to recall Mrs. Merino to testify through an interpreter. The trial court denied the motion.
Generally, the decision to allow a witness to testify through an interpreter is within the sound discretion of the trial court. Watson v. State, 190 So.2d 161 (Fla. 1966), cert. denied, 389 U.S. 960, 88 S.Ct. 339, 19 L.Ed.2d 369 (1967). In the instant case the witness had no problem on direct examination and only a limited problem on cross-examination. Defense counsel had full opportunity to clear up any misunderstandings on redirect and made no objection at that time to the absence of an interpreter. Under these facts the trial court did not abuse its discretion in denying the motion made after the witness had been excused.
Bolender's final arguments are that the trial court erred in overriding the jury's recommendation of life imprisonment and in basing its decision on aggravating circumstances which had no basis in the record or were nonstatutory aggravating circumstances. In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), we held that for a trial court to override an advisory sentence of life imprisonment by a jury "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Bolender contends that the jury's recommendation was reasonable because the victims were armed cocaine dealers who may have been planning to rob the defendants, because Macker received a comparatively light sentence, and because only Macker testified as to who shot, stabbed, and killed the victims.
We have examined the record and arguments of counsel and do not agree with these contentions. That the victims were armed cocaine dealers does not justify a night of robbery, torture, kidnapping, and murder. Two of the victims were unarmed and present at the Macker residence because of a previous agreement with Bolender.
The disparity between Bolender's death sentences and Macker's twelve concurrent life sentences is supported by the facts. Bolender acted as the leader and organizer in these crimes and inflicted most of the torture leading to the victims' deaths. Bolender used a hot knife to burn Nicomedes Hernandez on the back and inflicted slash wounds on two of the victims. He also shot Hernandez in the leg in an effort to make him reveal the location of his cocaine and inflicted the stab wounds and gunshot wounds that led to the victims' deaths. Macker's role was less significant, and there is no evidence that he participated in the stabbing and shooting of the victims. Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Meeks v. State, 339 So.2d 186 (Fla. 1976), cert. denied, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978). There was sufficient collaborating testimony regarding Bolender's participation in these crimes. Based on the evidence and testimony at trial, we agree with the trial court that virtually no reasonable person could differ on the sentence.
The trial court found all but one aggravating circumstance to apply.[5] We agree, however, that the court erred in applying two of the circumstances. Aggravating circumstance (5)(a) is not applicable because being on probation is not equivalent to being under a sentence of imprisonment at the time of the crime. Ferguson v. State, 417 So.2d 639 (Fla. 1982); Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Bolender was on probation for two prior *838 crimes. The trial court indicated, however, that although he considered this an aggravating circumstance he did not rely on it solely, basing his decision on all of the applicable factors.
Circumstance (5)(c), knowingly creating a great risk of death to many persons, is also inapposite. While other persons were at the Macker home during the course of the evening, Bolender never directed his actions toward any of the uninvolved people, and the means by which he inflicted the injuries, the gun, knife, and baseball bat, were not used to endanger the lives of those individuals. Lewis v. State, 398 So.2d 432 (Fla. 1981); Williams v. State, 386 So.2d 538 (Fla. 1980).
The court properly applied the remaining factors. The crimes were committed during the perpetration of a robbery and kidnapping and were committed for pecuniary gain. They were committed for the purpose of avoiding or preventing a lawful arrest and to disrupt or hinder the lawful exercise of law enforcement. John Merino was described as a police informant and was still alive when the defendants attempted to burn the vehicle. After committing the robbery, kidnapping, and torture, the defendants murdered the victims partially to prevent their retaliation but also to prevent arrest. Finally, these crimes were especially heinous, atrocious, and cruel and were committed in a cold, calculated, and premeditated manner. Bolender presented no testimony showing any mitigating circumstance, statutory or nonstatutory.[6] In the absence of any mitigating circumstance disapproval of two aggravating factors does not require reversal of the death sentence. Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).
Bolender's convictions and sentences are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] In the sentencing order the trial court indicated that a kilogram of cocaine was worth $65,000.
[2] The court found the following circumstances listed in § 921.141(5) applicable: (a) the crime was committed by a person under sentence of imprisonment; (c) the defendant knowingly created a great risk of death to many persons; (d) and (f) the crime was committed during the perpetration of a robbery and kidnapping and was committed for pecuniary gain; (e) and (g) the crime was committed for the purpose of avoiding or preventing a lawful arrest and to disrupt or hinder the lawful exercise of law enforcement; (h) and (i) the crime was especially heinous, atrocious, and cruel and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
[3] Thompson had previously been severed by the state because of his mental condition.
[4] The trial judge based his presumption on a recent adjudication by a federal district court that Thompson was incompetent to stand trial.
[5] § 921.141(5)(b).
[6] The state's deal with Macker was argued as mitigation; this has been discussed above.