Bernard **BOLENDER**, Petitioner,

v.

Richard **DUGGER**, Respondent.

No. 90–2262–CIV.

United States District Court,
S.D. Florida.

Feb. 15, 1991.

Billy H. Nolas, Tallahassee, Fla., for petitioner.

Fariba Komeily, Asst. State Atty., Miami, Fla., for respondent.

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MORENO, District Judge.

Bernard Bolender petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his convictions and sentences of death were obtained in violation of the Fifth, Sixth, Eighth and Fourteenth amendments to the United States Constitution. Specifically, Bolender alleges, *inter alia*, that he was denied the right to have non-statutory mitigating evidence fully investigated, developed, presented and considered due to the instructions and standards then in effect, and to the effective assistance of counsel at sentencing.

Bolender was indicted on four counts of first degree murder, four counts of kidnapping and four counts of armed robbery for the torture slaying of four alleged drug dealers. On April 25, 1980, Bolender was convicted of all charges, and after a sentencing hearing on the same day, the jury unanimously recommended life imprisonment. At the sentencing hearing, defense counsel declined to present further testimony after being offered an opportunity to do so. Circuit Judge Richard Fuller overrode the jury's recommendation and on May 7, 1980, entered written findings in support of the death sentence.

## FACTUAL BACKGROUND

Bolender appealed to the Florida Supreme Court which affirmed Bolender's convictions and sentences. *Bolender v. State*, 422 So.2d 833 (Fla.1982), *cert. denied, Bolender v. Florida*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983). The facts leading to Bolender's conviction and sentencing, as established by the Florida Supreme Court, are summarized as follows:

On the evening of January 8, 1980, Bolender and co-defendants Paul Thompson and Joseph Macker were at Macker's residence when two of the victims, John Merino and Rudy Ayan, arrived pursuant to a previous arrangement with Bolender. An argument erupted and Bolender, armed with a gun, ordered the two unarmed victims to strip. A third victim, Scott Bennett, arrived with a kilogram of cocaine and was brought into the house at gunpoint by Thompson. Macker, searching outside for any additional persons, noticed a car driving back and forth in front of the house. After Macker made a futile attempt to persuade the driver to enter the house, Thompson ordered Merino to get dressed and assist him in luring the driver, Nicomedes Hernandez, into the house. The defendants subsequently found over $2,000 in the car.

The defendants, at Bolender's direction, ordered Bennett and Hernandez to strip and robbed all four of their jewelry. Bolender threatened to kill all four victims if they did not reveal the location of an additional twenty kilograms of cocaine. Bolender proceeded to torture and terrorize the victims in an attempt to obtain their cocaine. Bolender kicked the victims and beat them with a baseball bat. Bolender burned Hernandez' back with a hot knife and shot him in the leg in an attempt to make him talk. All of the victims were repeatedly stabbed with knives throughout

their bodies. The victims continued to insist, however, that they only had one kilogram of cocaine and not the twenty that Bolender wanted.

The victims were then wrapped in sheets, rugs, bedspreads, and the material from a beanbag chair, and placed in the car Hernandez had been driving. At approximately 4:30 a.m., Bolender and Thompson abandoned the car, with the victims inside, at the side of I–95, a short distance past an entrance ramp. They poured gasoline on the vehicle and surrounding grass, igniting the gasoline as they left. Merino was still alive at this point although the others were, presumably, dead. Passing motorists noticed the flames and were able to extinguish the fire. On January 13, 1980, Bolender and Macker were arrested for the murders.

## TRIAL COURT'S FINDINGS IN SUPPORT OF THE DEATH PENALTY

The Trial Judge considered as aggravating circumstances: (1) Bolender's prior record, including possession of burglary tools, sale of cocaine and gun charges; (2) Bolender's testimony that he had been a large cocaine dealer and had been involved in attempted cocaine ripoffs involving large numbers of armed participants; (3) that in committing the torture murders, Bolender knowingly created a great risk of death to many persons, including Mrs. Macker, who was seven months pregnant; (4) that Bolender exercised domination over his co-defendants in the shooting, stabbing and killing of the victims; (5) that the victims were bound and gagged and forced to lie on the floor semi-naked; (6) Mr. and Mrs. Macker's fear for their own lives and the lives of four other persons located within their home at the time of the murders; (7) that the capital felonies were committed during the perpetration of a robbery and kidnapping and were committed for pecuniary gain; (8) that the defendants put great effort in attempting to make certain that the crimes would go undetected by removing and attempting to destroy the bloodied carpeting and other damaged items in the house, discarding the guns, destroying the

bodies of the victims by setting the car on fire, instructing witnesses to remain silent regarding the incident and making arrangements to install new carpeting and paint the house; (9) that the crimes were particularly heinous, atrocious and cruel, and were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. Specifically, Judge Richard Fuller stated that such acts reflected a complete lack of pity or conscience.

The trial court ultimately concluded, after consideration of all matters presented to it, that: (1) Bolender had a significant history of prior criminal activity; (2) at the time of the murders, Bolender was not under the influence of extreme mental or emotional disturbance and had the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; (3) the victims neither participated in nor consented to the defendant's conduct; (4) the defendant was a principal participant in the planning and execution of the robberies, kidnappings and murders; (5) Bolender's role was major in the crimes committed and he, personally, was responsible for most of the maiming, torture and deaths of the victims; (6) there was nothing to suggest that Bolender was acting under duress or substantial domination of another person; and (7) Bolender's age could not be considered a mitigating factor.

The trial court concluded that sufficient aggravating circumstances existed to impose the death penalty, and no mitigating circumstances existed which could have outweighed the aggravating circumstances.

## PROCEDURAL HISTORY

On direct appeal of the convictions and sentences, Bolender raised issues regarding the Court's alleged abuse of discretion in limiting testimony, overriding the jury's recommendation of life and considering improper aggravating circumstances.

The Florida Supreme Court found that the trial court did not abuse its discretion regarding the testimony. As to the alleg-

edly improper jury override, Bolender argued that the jury's recommendation was reasonable because the victims were armed cocaine dealers who may have been planning to rob the defendants, Macker received a comparatively light sentence, and only Macker testified as to who shot, stabbed, and killed the victims. The Florida Supreme Court did not agree, finding

> ... [t]hat the victims were armed cocaine dealers does not justify a night of robbery, torture, kidnapping, and murder. Two of the victims were unarmed and present at the Macker residence because of a previous agreement with Bolender.
>
> The disparity between Bolender's death sentences and Macker's twelve concurrent life sentences is supported by the facts. Bolender acted as the leader and organizer in these crimes and inflicted most of the torture leading to the victims' deaths.... Macker's role was less significant, and there is no evidence that he participated in the stabbing and shooting of the victims. (Citations omitted) .... Based on the evidence and testimony at trial, we agree with the trial court that virtually no reasonable person could differ on the sentence.

*Bolender*, 422 So.2d at 837.

The Florida Supreme Court further noted that Bolender presented no testimony showing any mitigating circumstance, statutory or nonstatutory. In the absence of any evidence of mitigating circumstances, disapproval of two aggravating factors does not require reversal of the death sentence. *Id.* at 838, *citing Demps v. State*, 395 So.2d 501 (Fla.1981), *cert. denied*, *Demps v. Florida*, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).

Bolender then filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on May 16, 1983. The petition alleged violations of federal constitutional rights which had not been argued to the Florida Supreme Court.

On August 1, 1983, Bolender filed a motion to set aside judgment and sentence pursuant to Rule 3.850, Fla.R.Crim.P., due to ineffective assistance of counsel in failing to obtain Thompson's testimony and failing to present mitigating evidence at the penalty phase. Bolender's first death warrant was signed on January 31, 1984. The trial court issued a stay of execution and ordered an evidentiary hearing.

On January 4, 1985, an evidentiary hearing was held before Circuit Judge Herbert M. Klein on the claim of ineffective assistance of counsel for failure to present mitigating evidence. Judge Klein heard testimony from Bolender's mother and sister as to Bolender's background, and the fact that they had discussed this background with Bolender's trial attorney prior to trial. Bolender's trial attorney, G.P. Della Ferra, also testified at the evidentiary hearing. Della Ferra stated that he knew about Bolender's background through discussions with Bolender, his mother and sister, and that they were available to testify regarding such information. He further testified that he was aware that he could present such evidence as mitigating circumstances, but that as a matter of strategy, based upon his observation of the jurors' demeanor at sentencing, declined to present such evidence.

Della Ferra testified that he based his tactical decision on his belief that Judge Fuller would impose the death penalty in such a situation. He further testified that background testimony from Bolender's mother and sister would not be persuasive, as Judge Fuller had the opportunity to evaluate Bolender's character during the trial. Trial counsel decided that a quick recommendation of life from the jury would be more important to Judge Fuller than background testimony from the family.

Judge Klein denied Bolender's claim of ineffectiveness of counsel regarding Thompson's testimony. However, he vacated Bolender's death sentences on the ground that trial counsel was ineffective for failing to present mitigating evidence, despite the attorney's strategic and reasonable decision to rely exclusively on the jury's unanimous quick recommendation.

The State appealed Judge Klein's order vacating the death sentences, and the Flor-

ida Supreme Court reversed, directing reinstatement of Bolender's death sentences. *State v. Bolender*, 503 So.2d 1247 (Fla. 1987), *cert. denied, Bolender v. Florida*, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987). The Florida Supreme Court found that the mitigating evidence presented at the evidentiary hearing before Judge Klein was known and available to the trial counsel, who had tactically decided not to present such evidence. The Court determined that

> [t]o demonstrate ineffective assistance, it must be shown both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). In assessing effectiveness "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690 [104 S.Ct. at 2066].
>
> ... Bolender's current counsel identified specific omissions, i.e., the failure to have the mother and sister testify. The rest of the test for effectiveness, however, has not been met. Trial counsel testified that he made a strategic choice. Taking into account all the circumstances—the unlikelihood of this testimony impressing the trial judge, the state's ability to undermine these witnesses' testimony through cross-examination and rebuttal, and the disparate treatment afforded the co-perpetrators—trial counsel made a reasonable choice well within the wide range of professionally competent assistance. Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected.

*Bolender*, 503 So.2d at 1249–1250.

The Office of Capital Collateral Representative thereafter assumed representation of Bolender. A Petition for Writ of Certiorari was filed with the United States Supreme Court alleging that the Florida Supreme Court erroneously interpreted the ineffective assistance of counsel claim under *Strickland*. The petition was denied on October 5, 1987.

On September 4, 1987, the trial court enforced the Florida Supreme Court's mandate and reinstated the death penalty. Bolender appealed the reinstatement of the death sentences but such appeal was dismissed.

A second postconviction motion under Fla.R.Crim.P. 3.850 was filed on April 24, 1989. On January 31, 1990, the Governor signed Bolender's second death warrant. Execution was scheduled for March 7, 1990. On February 12, 1990, the trial court heard argument on Bolender's second motion. The court found petitioner's motion to be a successive Rule 3.850 motion and denied relief without an evidentiary hearing.

The petitioner appealed the denial of his second Rule 3.850 motion and on March 5, 1990, filed an application for stay of execution and a petition for writ of habeas corpus with the Florida Supreme Court. Bolender asserted, *inter alia*, that his death sentences were in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), *on remand, Hitchcock v. Dugger*, 832 F.2d 140 (11th Cir.1987), and its progeny because Judge Fuller did not properly consider non-statutory mitigation and Della Ferra's presentation of non-statutory mitigating evidence was inhibited by the law in effect prior to *Hitchcock*. The Florida Supreme Court stayed Bolender's execution allowing the circuit court to hold a second hearing on Bolender's Rule 3.850 motion on March 9, 1990. The court once again denied relief.

The Florida Supreme Court heard oral argument and on May 17, 1990, issued an opinion denying relief as to all pending claims. *Bolender v. Dugger*, 564 So.2d 1057 (Fla.1990). Regarding the Rule 3.850 appeal, the Court found that all issues, except the alleged *Hitchcock* error, were procedurally barred as they were, or should have been, raised prior to the second Rule 3.850 motion. As to the *Hitchcock* claim, the Court noted that the *Hitchcock* court ordered the state either to vacate Hitchcock's death sentence or to resentence him "in a proceeding that comports with the

requirements of *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978)." *Hitchcock*, 481 U.S. at 399, 107 S.Ct. at 1824.

As to the claims of ineffective assistance of appellate counsel alleged in the habeas petition, the Court considered the propriety of Bolender's sentences on direct appeal. The Court, *citing Porter v. Dugger*, 559 So.2d 201 (Fla.1990), cautioned that habeas corpus is not to be used to relitigate issues determined in a prior appeal. *Bolender*, 564 So.2d at 1057.

Bolender filed a motion for rehearing, which was denied on September 4, 1990. The Governor then signed a third death warrant. Execution was scheduled for October 4, 1990. On October 1, 1990, this Court granted a stay of execution to address the matters presented by Bolender's petition. On October 1, 1990 and November 9, 1990, this Court held non-evidentiary hearings on the issues raised in Bolender's petition and application for stay of execution.

### ISSUES PRESENTED

The two principal claims raised by Bolender are that his death sentences were in violation of *Hitchcock v. Dugger, supra*, and that his trial counsel was ineffective at trial and sentencing in violation of *Strickland, supra*. Petitioner argues that he is entitled to resentencing because (1) it is "not certain" that the trial judge, in overriding the jury's life recommendation, considered nonstatutory mitigating evidence or, (2) that defense counsel fully understood that he could develop and present such evidence. These claims will be discussed separately.

The remaining issues include errors as to the Court's jury instructions at the guilt phase; an alleged denial of petitioner's right to present testimony of co-defendant Paul Thompson; appellate counsel's alleged ineffective assistance; improper use of aggravating circumstances resulting in an alleged arbitrary, capricious and unreliable sentence of death and the use by sentencing judge of non-record reports.

At both hearings before this Court, the petitioner, without abandoning those "secondary" claims, argued his most meritorious allegations of a *Hitchcock* violation and ineffective assistance of trial counsel at the sentencing phase. The Court, in considering all claims, has reviewed the entire trial record, the transcripts of post conviction hearings and all memoranda and case law cited.

### I. THE HITCHCOCK CLAIM

 Bolender attacks his sentences as unconstitutional, relying on *Hitchcock, supra*, and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). It is well established that the Eighth and Fourteenth Amendments require a sentencer to consider all relevant mitigating evidence in capital cases. *Lockett, supra*. In *Hitchcock*, the Supreme Court conclusively determined that a sentencing body must not be limited in its consideration of mitigating circumstances. This principle applies to both the Florida sentencing jury and the sentencing judge. *Riley v. Wainwright*, 517 So.2d 656 (Fla.1987); *Messer v. Florida*, 834 F.2d 890 (11th Cir.1987).

The defense attorney in *Hitchcock* introduced statutory and nonstatutory mitigating evidence. Although he stressed the statutory mitigating circumstances in closing argument, he urged the jury to consider all evidence presented. By contrast, the prosecutor and judge both encouraged the jury to consider the mitigating circumstances, specifically enumerating only the statutory mitigating circumstances. In imposing the death sentence, the sentencing judge found that "there [were] insufficient mitigating circumstances as enumerated in Fla.Stat. § 921.141(6) to outweigh the aggravating circumstances." *Hitchcock*, 481 U.S. at 396, 107 S.Ct. at 1823.

The Court concluded that the jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory, mitigating circumstances. *Id.* The Supreme Court found a *Lockett* violation and granted a writ of habeas corpus. *Hitchcock* settled that, absent a showing of harmless error, the exclusion of

nonstatutory mitigating evidence will render a death sentence invalid.

Here, the record clearly refutes Bolender's allegation that his defense counsel was precluded from presenting nonstatutory mitigating factors. At the state evidentiary hearing, attorney Della Ferra testified that he investigated nonstatutory mitigating evidence, but based on his observations of the jurors, decided that a quick recommendation of life would be more influential upon Judge Fuller. Counsel further testified that he knew he was not limited to the statutory mitigating factors. Prior to trial, defense counsel filed a motion citing *Lockett*, and later argued the disparate treatment of a codefendant as a nonstatutory mitigating circumstance. *See White v. Dugger*, 523 So.2d 140 (Fla.1988). In view of the jury's unanimous recommendation for life, if any error existed in the instructions, it is harmless.

Similarly, the trial judge did not limit his consideration to statutory mitigating factors. His sentencing order, after listing the absence of specific statutory mitigating factors, reflected that no evidence or matters were brought to the attention of the trial court *in addition* to the enunciated mitigating factors. Furthermore, Judge Fuller stated that "there are no mitigating circumstances existing—either statutory or otherwise—which outweigh any aggravating circumstances."

It is clear that trial counsel, after interviewing witnesses and investigating the case, made a tactical decision not to present any mitigating evidence, other than to argue the disparate treatment of a codefendant and the statutory mitigating circumstances. When such strategic decisions are made, one can hardly complain of error for not considering that which was not presented.

This conclusion leads to the only remaining issue deserving of extensive discussion: the alleged ineffective assistance of counsel in making such tactical decision. Such issue may be decided without the need of a federal evidentiary hearing, since Bolender received a full and fair hearing on this

issue in the State Rule 3.850 proceeding.[1] *Francis v. Dugger*, 908 F.2d 696 (11th Cir. 1990), *reh'g denied*, 919 F.2d 742 (11th Cir.1990).

## II. THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

█ Bolender argues that he was denied reasonably effective assistance of counsel because his lawyer did not present nonstatutory background mitigation. The defendant is guaranteed the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstance, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. at 2065.

There is no question that trial counsel's strategy regarding which evidence to present and not to present to the jury was reasonable. The defendant's counsel achieved what he tactically sought: a quick, unanimous recommendation for life. He did so after fully investigating the case, including interviewing Bolender's relatives. Counsel made the additional tactical decision to rely on the jury's recommendation and the disparity argument with the sentencing judge. Such decisions did not render counsel deficient since they were made deliberately, as part of a reasonable strategy after full investigation. Such were the findings of fact made by the Florida Supreme court in reviewing the transcripts of the post-conviction evidentiary hearing where counsel and the petitioner's mother and sister testified. There is no question that "Mr. Della Ferra knew it all."

The findings of historic facts made by the Florida Supreme Court and fairly supported by the record are binding on the federal court in habeas corpus proceedings. *Tucker v. Kemp*, 776 F.2d 1487, 1490, n. 7 (11th Cir.1985); *Messer v. Florida*, 834

---

1. This Court has reviewed the transcripts of such hearing.

F.2d at 896. While the findings of historical fact are entitled to a presumption of correctness, 28 U.S.C. § 2254(d), the conclusions regarding effective assistance of counsel, whether made by the Florida state courts or the district court and whether stated as "findings" or otherwise, are matters of law and thus are not presumed correct. *Lusk v. Dugger*, 890 F.2d 332, 336 (11th Cir.1989), *reh'g denied*, 894 F.2d 414 (11th Cir.1990). An independent review of the evidentiary hearing in state court can yield no other conclusion but that trial counsel knew of Bolender's background and the availability of his mother and sister's testimony. Furthermore, counsel testified at the same hearing that he made the decision to argue the quick recommendation of life from the jury as opposed to background testimony from relatives. Such performance, despite the outcome, met the proper standard for reasonably effective assistance.

Della Ferra's current affidavit regarding his knowledge of capital sentencing law today and regretting not presenting other evidence does not require a second evidentiary hearing since this Court can rely on the state court proceeding where Della Ferra testified on the identical claims of ineffective assistance of counsel. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. Applying that standard, Della Ferra was reasonable in his sentencing strategy and any of the proffered changes in strategy would not have had a prejudicial effect on Judge Fuller's final judgment of death.

### III. ERROR IN JURY INSTRUCTIONS

■ Bolender claims as erroneous a portion of the trial judge's instruction to the jury which read, in pertinent part:

"[T]here is no argument in this case but that a homicide did take place on that date or those dates and that it occurred in Dade County. Obviously the balance of the issues are for your determination."

A review of the entire jury charge makes it abundantly clear that the definition of homicide is simply "the killing of one human being by another" and that it could be lawful or unlawful. The Court neither expressed an opinion on the legality of the killing nor connected it to the defendant. Furthermore, the defense conceded that the tortured and mutilated bodies were obviously killed by another human being. This claim is devoid of merit.

### IV. DENIAL OF RIGHT TO PRESENT CODEFENDANT'S TESTIMONY

■ Bolender claims that his constitutional rights were violated when the trial court refused to allow him to secure codefendant Paul Thompson's testimony. In *Bolender v. State*, 422 So.2d 833 (Fla.1982), *cert. denied, Bolender v. Florida*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983), the Florida Supreme Court held that the trial court did not abuse its discretion in denying the petition for habeas corpus *ad testificandum* of incarcerated witnesses who had been adjudicated incompetent. A further independent review of the record by this Court leads it to the same legal conclusion.

### V and VI. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND APPEAL

■ In *Strickland, supra*, the Supreme Court delineated the two-prong test for ineffective assistance of counsel: (1) that counsel performed outside the wide range of professionally competent assistance and (2) that there is a reasonable probability of a different result but for counsel's errors. Petitioner can satisfy neither prong of the *Strickland* test.

Counsel's alleged errors include the failure to subpoena the guardian of the incompetent witness Thompson. First, as discussed above (Claim IV), witness Paul Thompson's adjudication of incompetency would have prevented his testimony. Secondly, the testimony, now ten years later, being proffered would not have a reasonable probability of resulting in an acquittal.

The additional alleged erring of counsel's failure to object to the closing arguments or the jury instructions have not been demonstrated as prejudicing the defendant. As to the claim of ineffective cross-examination, a review of the trial transcript demonstrates that trial counsel's conduct was reasonable and professional.

As to the appellate counsel, Bolender simply complains about "non-raised issues" without specifying the appellate points omitted. Of course, raising every single frivolous point on appeal is not a sign of effective counsel and indeed "often has the effect of diluting the import of stronger points." *Atkins v. Dugger*, 541 So.2d 1165, 1167 (Fla.1989). The presumption that appellate counsel's conduct falls within the wide range of reasonable Bolender professional assistance has not been overcome by Bolender.

## VII, VIII, IX and X. IMPROPER USE, DOUBLING AND WEIGHING OF AGGRAVATING CIRCUMSTANCES

Bolender claims impermissible "doubling" of the following aggravating circumstances: (a) robbery with pecuniary gain; (b) avoiding arrest with hindering law enforcement; and (c) heinous, atrocious or cruel with cold, calculated and premeditated.

He also alleges that the application of these aggravating circumstances was unconstitutional and that after the Florida Supreme Court struck two aggravating circumstances it should have remanded to the trial court for sentencing. Instead the Florida Supreme Court held that the invalidation of two aggravating circumstances did not require a reversal of the death sentence in view of the remaining aggravating circumstances.

■ There is ample record evidence to support the aggravating circumstances found. This Court cannot improperly engage in reweighing the evidence after the state courts have determined that the sentencing judge's override of the jury's recommendation was constitutional. *Lusk v. Dugger, supra.* In any event, in Bolen-der's case there were no mitigating circumstances presented thus obviating the need to reweigh the evidence.

■ Bolender also claims that the state trial court erred in imposing the death sentences following a unanimous jury recommendation of life imprisonment. This Court's role is not to determine whether the trial court complied with state law. *See Tedder v. State*, 322 So.2d 908 (Fla. 1975) (override is to be upheld only if the facts suggesting a sentence of death are so clear and convincing no reasonable person could differ). Rather, the district court's task is to determine if the judge imposed the penalty in an arbitrary or discriminating manner. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Francis v. Dugger*, 908 F.2d 696 (11th Cir.1990), *reh'g denied*, 919 F.2d 742 (11th Cir.1990).

The recent capital case of *Parker v. Dugger*, — U.S. —, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), *reversing Parker v. Dugger*, 876 F.2d 1470 (11th Cir.1989), is not applicable to these facts. In *Parker* the United States Supreme Court held that the Florida Supreme Court acted arbitrarily and capriciously by failing to properly treat Parker's nonstatutory mitigating evidence. The *Parker* case involved a jury override for one murder but not for a second murder committed by the same defendant. The Florida Supreme Court, after striking two aggravating circumstances, concluded that the trial judge found no mitigating circumstances to balance against the aggravating factors. The Florida Supreme Court in *Parker*, did not conduct the independent reweighing of the evidence despite that record containing substantial evidence favoring mitigation. In Bolender's case, the tactical decision of presenting no mitigation was made by informed and capable defense counsel. *Parker* is therefore inapplicable since the record here contained no mitigating circumstances.

## XI and XII. VIOLATION OF MAYNARD v. CARTWRIGHT

■ Bolender contends that the Florida statutory aggravating factors of "cold, cal-

culated and premeditated" and "heinous, atrocious and cruel" were applied to him in an unconstitutional overbroad manner in violation of *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Such claims lack merit in view of *Lindsey v. Thigpen*, 875 F.2d 1509 (11th Cir.1989), and *Bertolotti v. Dugger*, 883 F.2d 1503 (11th Cir.1989).

### XIII. IMPROPER SHIFT OF BURDEN

 Bolender contends that the trial court required him to establish mitigation. In support of his position, Bolender cites *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988), which discussed Arizona's capital sentencing scheme. Florida's capital sentencing statute and its application in this case is easily distinguished from the *en banc* majority's view of Arizona's death penalty laws. Florida's death sentence statute does not improperly shift the burden to the defendant on the issue of whether he should live or die. Judge Fuller's sentencing procedure comported with all constitutional guarantees.

### XIV. AUTOMATIC AGGRAVATING CIRCUMSTANCE

 Bolender claims that, since the indictment charged in the alternative both felony murder and premeditated murder, the conviction for first degree murder was predicated upon the felony murder finding. Petitioner argues that such finding formed the basis for conviction and hence an allegedly automatic finding of a statutory aggravating circumstance.

There is no constitutional deprivation in the charging in the alternative particularly where, as here, there is ample evidence of both intent and premeditation. In any event, there remains sufficient aggravating circumstances, as found by the trial court and the Florida Supreme Court to support a sentence of death since no mitigating factors were presented nor found. It is not this Court's function to agree with the trial judge and the Florida Supreme Court.

*Spaziano v. Florida*, 468 U.S. 447, 467, 104 S.Ct. 3154, 3166, 82 L.Ed.2d 340 (1984). Rather this Court's review is limited to whether the sentence was arbitrary or discriminatory.

### XV. USE OF NON–RECORD REPORT IN SENTENCE

 Bolender claims that the judge may have considered non-record sentencing reports due to the trial court placing Bolender on probation in the past. There is absolutely no evidence of any presentence investigation report used by the court in its prior placement of the petitioner on probation. The support for Bolender's allegations rests with the following comments from the court:

Mr. Bolender has been before me, of course, on previous occasions, a number of probation occasions, because of problems concerning scheduling, and this case fell into my division as a result of the earlier probation upon which I had placed him, part of which, I think, had a term, some period of incarceration running concurrent with the Federal sentence or credit for times served in the Federal System which was imposed.

It is clear that the judge's remarks were made in the context of finding the statutory aggravating circumstance that "the capital felony was committed by a person under sentence of imprisonment." Fla. Stat. § 921.141(5)(a). Since being on probation is not the equivalent of being under a sentence of imprisonment, the Florida Supreme Court invalidated this aggravating circumstance.[2] The possibility of any sentencing report existing in the prior probation cases is mere speculation on the part of petitioner's counsel.

### XVI. IMPROPER JURY INSTRUCTIONS

Bolender claims that the jury instructions defining the state's burden of proof beyond a reasonable doubt deprived him of his constitutional rights. A review of the

---

**2.** The second aggravating circumstance stricken was the finding that Bolender's actions created a great risk of death to individuals other than the actual victims. *Bolender v. State*, 422 So.2d 833 (Fla.1982), *cert. denied*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983).

record directs the Court to reach a totally different conclusion. The jury was properly instructed in accordance with the safeguards provided by the Constitution.

## XVII. INEFFECTIVE ASSISTANCE OF COUNSEL AT ALL PROCEEDINGS

Bolender again claims that counsel at trial and collateral proceedings were ineffective. This court, relying on the state evidentiary hearing, has found otherwise. The reasoning has been discussed in the earlier portions of this opinion and need not be reiterated under this separately numbered claim.

WHEREFORE, it is hereby ORDERED AND ADJUDGED that

Bernard Bolender's Petition for Writ of Habeas Corpus is DENIED. Petitioner is granted leave to appeal *in forma pauperis* but the stay of execution previously granted is dissolved.

DONE AND ORDERED.